(Slip Opinion)

# Designation of Homeland Security Investigations Special Agents and State and Local Officers Serving on HSI Task Forces to Assist with Controlled Substances Act Investigations

The Controlled Substances Act, 21 U.S.C. §§ 873(b) and 878, authorizes the Attorney General to designate Homeland Security Investigations special agents, regardless of whether their duties ordinarily include CSA investigations, as well as state and local law enforcement officers serving on HSI task forces, to investigate drug offenses ordinarily within the Drug Enforcement Administration's sole jurisdiction.

When investigating drug offenses pursuant to such designations, all HSI personnel (including state and local law enforcement personnel serving as task force officers) must operate under DEA's supervision.

January 15, 2025

MEMORANDUM OPINION FOR THE
DEPUTY ATTORNEY GENERAL

The Attorney General and the Department of Justice (the "Department") are statutorily charged with enforcing the Controlled Substances Act ("CSA"), 21 U.S.C. § 801 *et seq.* To that end, the CSA authorizes officers and employees of the Drug Enforcement Administration ("DEA"), as well as "any State, tribal, or local law enforcement officer designated by the Attorney General," to engage in particular law enforcement functions. 21 U.S.C. § 878. The CSA further provides that, "[w]hen requested by the Attorney General, it shall be the duty of any agency or instrumentality of the Federal Government to furnish assistance, including technical advice, to him for carrying out his functions under this subchapter." *Id.* § 873(b).

For four decades, DEA and U.S. Immigration and Customs Enforcement ("ICE") (and its predecessor agencies) have cooperated in investigating violations of the CSA pursuant to a series of memoranda of understanding and interagency cooperation agreements. Under the terms of the current agreement, DEA—acting pursuant to a delegation of the Attorney General's authority under section 873(b)—designates Homeland Security Investigations ("HSI") special agents who meet certain criteria to investigate drug offenses ordinarily within DEA's sole jurisdiction. *See* Interagency Cooperation Agreement Be-

1

tween the U.S. Drug Enforcement Administration and U.S. Immigration and Customs Enforcement Regarding Investigative Functions Related to the Controlled Substances Act (June 18, 2009) ("ICA"); *see also* 28 C.F.R. Part 0, Subpart R, Appendix, § 11. Currently, those criteria specify that, to be designated, HSI agents' regular "duties" must "include the investigation of narcotics cases with a clearly articulable nexus to the border or [ports of entry]." ICA § III.C.1. Once designated, HSI agents exercise their CSA authority in cooperation with, and under the supervision of, DEA. *See id.* §§ III–IV.

In connection with recent discussions between the Department and the Department of Homeland Security ("DHS") concerning the ICA, you asked whether 21 U.S.C. §§ 873 or 878 authorizes the designation of two additional categories of personnel: (1) HSI special agents whose duties ordinarily do not include CSA investigations, but who could support such investigations on a temporary basis, and (2) state and local law enforcement officers serving on task forces under HSI's authority. You further asked, if so, whether those designated personnel must be under DEA supervision when engaged in CSA investigations. For the reasons provided below, we conclude that the Attorney General (and by delegation, DEA) may designate both categories of officers to exercise authority to investigate violations of the CSA, but those officers may exercise that authority only under DEA supervision.[1]

## I.

Congress enacted the CSA as Title II of the Comprehensive Drug Abuse Prevention and Control Act of 1970. Pub. L. No. 91-513, tit. II, 84 Stat. 1236, 1242–84. The statute reflects Congress's recognition that the "illegal importation, manufacture, distribution, and possession and improper use of controlled substances have a substantial

---

[1] This opinion memorializes and elaborates on advice this Office provided you on May 21 and July 23, 2024. To support our further consideration of these questions, we received views from DEA and DHS. *See* Letter for Trisha Anderson, Principal Deputy Assistant Attorney General, Office of Legal Counsel, from Hallie M. Hoffman, Chief Counsel, DEA, *Re: DEA Response Memorandum to OLC Regarding 21 U.S.C. § 873(b)* (Sept. 18, 2024); Letter for Trisha Anderson, Principal Deputy Assistant Attorney General, Office of Legal Counsel, from John Havranek, Associate General Counsel for Operations and Enforcement, DHS (Sept. 20, 2024) ("DHS Submission").

and detrimental effect on the health and general welfare of the American people," and that "Federal control of the intrastate incidents of the traffic in controlled substances is essential" to combatting the problem. 21 U.S.C. § 801. The CSA therefore grants DEA officers and employees and "any State, tribal, or local law enforcement officer designated by the Attorney General" specific law enforcement authorities, including the authority to "carry firearms," "execute and serve search warrants, arrest warrants, administrative inspection warrants, subp[o]enas, and summonses," and make certain seizures and warrantless arrests. *Id.* § 878.[2] In addition, as noted above, the statute provides that, "[w]hen requested by the Attorney General, it shall be the duty of any agency or instrumentality of the Federal Government to furnish assistance, including technical advice, to him for carrying out his functions under this subchapter." *Id.* § 873(b).

Although the CSA assigns the Attorney General primary responsibility for enforcing the Nation's drug laws, that responsibility was not, at first, exclusive. Rather, Congress divided authority between the Department and the U.S. Customs Service, which was then part of the Department of the Treasury. The Controlled Substances Import and Export Act, 21 U.S.C. § 951 *et seq.*—enacted simultaneously with the CSA, *see* Pub. L. No. 91-513, tit. III, § 1000, 84 Stat. at 1285–96—provided the Secretary of the Treasury with authority to "administer oaths and affirmations, subp[o]ena witnesses, compel their attendance, take evidence, and require the production of records" as part of any investigation involving controlled substances "necessary and proper" to the enforcement of certain anti-smuggling laws. 21 U.S.C. § 967.

In 1973, President Nixon curtailed the Customs Service's authority through Reorganization Plan No. 2. *See* 87 Stat. 1091–94 (1973) ("1973 Plan"). The 1973 Plan transferred "all intelligence, investigative, and law enforcement functions" pertaining to controlled substances to the Department and limited the Customs Service's authority to conduct searches for

---

[2] As originally enacted, the CSA provided these authorities to officers and employees of the Bureau of Narcotics and Dangerous Drugs. *See* Pub. L. No. 91-513, tit. II, § 508, 84 Stat. at 1273. Reorganization Plan No. 2, 87 Stat. 1091–94 (1973), abolished the Bureau of Narcotics and Dangerous Drugs and replaced it with DEA, *see id.* at 1092. The CSA's reference was updated in 1979. *See* Department of Justice Appropriation Authorization Act, Fiscal Year 1980, Pub. L. No. 96-132, § 16, 93 Stat. 1040, 1049 (1979).

illicit drugs to "regular inspection locations at ports of entry or anywhere along the land or water borders of the United States." *Id.* at 1091. The 1973 Plan also mandated that "any illicit narcotics, dangerous drugs, marihuana, or related evidence seized, and any person apprehended or detained" by Customs officers after inspection at the border or ports of entry "shall be turned over forthwith to the jurisdiction of the Attorney General." *Id.*

Following the 1973 Plan, the Department and the Customs Service sought to cooperate to enforce the Nation's drug laws. In 1982, Attorney General William French Smith requested the assistance of the Customs Service pursuant to section 873(b). Request for Assistance and Authorization Respecting Drug Enforcement Activities of Certain Customs Officers in Domestic Drug Investigations (Mar. 20, 1982) ("1982 Request"). Specifically, Attorney General Smith authorized "specially designated" Customs Service personnel to "conduct intelligence, investigative, and law enforcement activities, vested by law in the Attorney General, which relate to the suppression of illicit traffic in controlled substances." *Id.* ¶ 2. The 1982 Request provided that the Customs Service would identify personnel for designation, and it delegated to DEA "the authority to make" the designations. *Id.* ¶ 3. The 1982 Request provided that "Customs personnel who are so designated will work under the supervision of DEA while in the performance of [their newly] authorized duties." *Id.*

DEA and Customs (and its successor, ICE[3]) have continued this designation practice for more than 40 years. To define and clarify that practice, DEA and Customs have entered into a series of written agreements setting forth the terms and conditions of those designations. Most relevant here, on June 18, 2009, DEA and ICE's Office of Investigations (now part of HSI[4]) entered into the ICA. On January 5, 2021, DEA and ICE reaffirmed and made minor changes to the ICA. *See*

---

[3] With the creation of DHS in 2003, many of the personnel and much of the authority of the Customs Service were transferred to the newly established ICE. *See* Homeland Security Act of 2002, Pub. L. No. 107-296, tit. IV, § 403, 116 Stat. 2135, 2178 (codified at 6 U.S.C. § 203(1)); ICE, *Honoring the History of ICE* (last updated Dec. 12, 2024), https://www.ice.gov/features/history.

[4] In 2010, the Offices of Investigations, Intelligence, and International Affairs within ICE were combined to create HSI, a single directorate within ICE. HSI, *History* (last updated Apr. 22, 2024), https://www.dhs.gov/hsi/history.

Joint Letter on the DEA-ICE Interagency Cooperation Agreement ("Joint Letter").

Under the ICA, as modified by the Joint Letter, HSI identifies, on an annual basis, an "unlimited number" of special agents "whose duties include the investigation of narcotics cases with a clearly articulable nexus to the border or [ports of entry]." ICA § III.C.1; Joint Letter at 2. DEA reviews the list of identified agents and then designates agents to investigate narcotics smuggling with a clearly articulable nexus to the United States border or ports of entry. *Id.* § III.B; *see* HSI and DEA Roles & Responsibilities Relating to Title 21 Coordinators, Attachment 2 to Joint Letter, at 2, 5 (Jan. 5, 2021). In addition, DEA designates HSI special agents assigned to certain task forces, strike forces, or investigations. ICA § III.C.1, 2. As discussed in more detail below, several provisions of the ICA provide for DEA oversight and ultimate decision-making authority over all CSA investigations.

In early 2024, as part of efforts to combat increases in the importation and use of synthetic drugs, the Department and DHS discussed possible modifications to the criteria for selecting HSI officers for designation under the ICA. In connection with those discussions, you asked us certain questions relating to the scope of the Attorney General's authority under 21 U.S.C. §§ 873 and 878. Specifically, you asked whether those statutes authorize the designation of two additional categories of personnel: (1) HSI special agents whose duties ordinarily do not include CSA investigations, but who could support such investigations on a temporary basis, and (2) state and local law enforcement officers serving on task forces under HSI's authority. You further asked, if so, whether those designated personnel must be under DEA supervision when engaged in CSA investigations.

## II.

We first address whether either section 873 or section 878 permits designation of HSI special agents whose duties ordinarily do not include CSA investigations, but who could support counternarcotics investigations on a temporary basis. We conclude that DEA may designate such agents pursuant to section 873(b), but that such agents—like all personnel designated pursuant to section 873(b)—must operate under DEA supervision.

## A.

Section 873(b) obligates "any" federal agency or instrumentality to furnish assistance to the Attorney General on request. On its face, the provision draws no distinctions among federal agencies or personnel, and nothing in its text restricts requests for assistance based on the ordinary duties of a particular agency or instrumentality, or its officials. The same is true of the legislative history. For example, the relevant committee reports describe the draft provision that became section 873(b) as "provid[ing] for the furnishing of technical and other assistance to the Attorney General by other agencies of the Federal Government," without any qualification as to particular agencies' or officials' ordinary duties. H.R. Rep. No. 91-1444, at 52 (1970); S. Rep. No. 91-613, at 29 (1969).

Our opinions are to the same effect. This Office has repeatedly considered whether section 873 authorizes the Attorney General to designate Customs Service officials with the power to investigate and enforce the federal drug laws. As discussed in more detail below, each time, we have concluded that the answer is yes. In those opinions, our analysis has not focused on whether the officials' ordinary duties concern narcotics investigations—or indeed, any other specific area of focus. Instead, we have explained that section 873(b) "provide[s] affirmative substantive authority for other law enforcement agencies," including ICE and the Customs Service, "to provide general law enforcement assistance to DEA." Memorandum for the Attorney General, from Theodore B. Olson, Assistant Attorney General, Office of Legal Counsel, *Re: Request by the Department of Justice for Assistance from the Department of Treasury in the Enforcement of the Controlled Substances Act, 21 U.S.C. §§ 801 et seq., and the Controlled Substances Import and Export Act, 21 U.S.C. §§ 951 et seq*. at 5 (Dec. 23, 1983) ("Olson Memo"). "The plain meaning" of the statute, we have explained, "is that agencies receiving" requests for assistance "may, at a minimum, use their existing authority for the purpose of enforcing the Controlled Substances Acts." *Id.* at 6.

Absent any ordinary-duties limitation in the text of section 873(b), its legislative history, or our prior opinions, we view the ICA's requirement that designated special agents' ordinary duties must include the investigation of narcotics cases, ICA § III.C.1, as a policy choice,

rather than a legal requirement. DEA and HSI thus may modify this provision if they so agree.

## B.

Whether designated HSI personnel must operate under DEA's supervision when engaged in CSA investigations requires a more in-depth analysis. Our prior opinions repeatedly state that Customs Service officials designated to investigate and enforce federal drug laws must do so under the supervision of DEA. We have not, however, always been clear on the source of that requirement. Although the supervision requirement was originally based, at least in part, on Customs officials' historically limited law enforcement powers, the requirement is also inherent in section 873(b)'s text and background principles regarding delegations between agencies. We therefore conclude that it continues to apply today.

We begin with our prior opinions. We first recognized a supervision requirement in a 1983 memorandum concerning Attorney General Smith's initial proposed use of section 873(b) to authorize Customs agents to exercise "special law enforcement powers"—specifically, the powers to execute and serve search warrants, make warrantless arrests, and seize property—in connection with investigations of CSA offenses. Olson Memo at 2–3. We noted that the proposed authorization raised "two related but analytically distinct questions." *Id.* at 4.

*First*, we considered whether section 873(b) provided "substantive authority for Customs agents to perform the same type of general law enforcement functions they ordinarily perform when interdicting drugs at the border," but which, "in this case, would be exercised for the purpose of enforcing" the CSA. *Id.* We observed that, as a general matter, the Department "may not assign the execution of its statutory responsibilities to other agencies" without statutory authorization; rather, "[b]y establishing the Department of Justice and placing certain responsibilities in its head, Congress has generally expressed its intent that these duties should be discharged by officials of this Department." *Id.* at 5 (citation omitted). But we determined that the "plain meaning" of section 873(b) provides statutory authorization for a limited assignment: It permits the Department to "request"—and obligates other agencies to "furnish"—"assistance" in carrying out the Attorney General's functions under the CSA, which, "at a minimum," authorizes

those agencies to "use their existing authority for the purpose of enforcing the Controlled Substances Acts." *Id.* at 6; *see id.* at 5–7.

*Second*, we considered whether section 873(b) authorized Customs agents to undertake the "special" law enforcement powers that they were "not ordinarily authorized to perform when interdicting drugs at the border, but which DEA agents are authorized to perform in executing" the CSA. *Id.* at 4. We found this question "more difficult": "[A]s a general matter," we explained, "special law enforcement powers such as the right to make arrests without warrant and execute search warrants must be conferred expressly by statute," but Customs officers did not otherwise possess all those authorities. *Id.* at 4, 7–8. We nonetheless concluded that "courts would probably uphold the exercise of these special law enforcement powers by Customs officials" based on a combination of considerations. *Id.* at 8. Most relevant here, we emphasized that Customs agents were, "as the agreement specifie[d], only offering 'assistance' to DEA agents and [would be] acting under DEA supervision." *Id.* at 2; *see also id.* at 9 (reviewing *Gooding v. United States*, 416 U.S. 430 (1974), which held that Congress did not intend to "dispense with the aid of other enforcement personnel . . . who had previously given assistance" in enforcing the Nation's drug laws when it adopted the CSA, *id.* at 449).

Our Office's jurisprudence thus initially rooted the supervision requirement, at least in part, in our "serious concern" with Customs officers undertaking "special" law enforcement functions that they did not "ordinarily" have statutory authority to perform. Olson Memo at 4, 7. Our emphasis on supervision appears to have been aimed at filling that statutory gap, allowing Customs officers to rely on DEA's statutory authority, rather than their own, in exercising those special law enforcement functions. *See id.* at 10.

The legal landscape shifted in October 1984, when Congress enacted the Comprehensive Crime Control Act, Pub. L. No. 98-473, 98 Stat. 1976 (1984), and the Trade and Tariff Act, Pub. L. No. 98-573, 98 Stat. 2948 (1984), which, among other things, expressly granted Customs officers the arrest and seizure powers they previously lacked. *See* 19 U.S.C. § 1589a. Since that time, however, this Office has repeatedly reaffirmed the supervision requirement, suggesting that its source is not, at least exclusively, the statutory gap addressed in the Olson Memo. *See, e.g.*, Memorandum for Joseph R. Davis, Chief Counsel, DEA, from Ralph W.

Tarr, Acting Assistant Attorney General, Office of Legal Counsel, *Re: Authority of the United States Customs Service to Participate in Law Enforcement Efforts Against Drug Violators* at 1–3 (June 11, 1985) (reiterating supervision requirement without expressly addressing the 1984 legislation); Memorandum for the Deputy Attorney General, from Douglas W. Kmiec, Deputy Assistant Attorney General, Office of Legal Counsel, *Re: United States Customs Service Jurisdiction Over Title 21 Drug Offenses* at 1–2 (June 3, 1986) (rejecting Customs Service's view that the 1984 legislation provided it with "independent enforcement authority over Title 21 drug offenses"); *Authority of the Customs Service to Seize or Forfeit Property Pursuant to 21 U.S.C. § 881*, 12 Op. O.L.C. 267, 275 (1988) (reaffirming that Customs personnel may "undertake drug enforcement investigations beyond the interdiction of drugs at the border . . . only with the specific approval of, and under the supervision of, the Department of Justice" (citation, quotation marks, and alterations omitted)).

Although our prior opinions did not say so expressly, we believe that the text and context of section 873(b) require the Attorney General to supervise personnel designated to assist DEA in enforcing the CSA. As noted above, section 873(b) provides that "[w]hen requested by the Attorney General, it shall be the duty of any agency or instrumentality of the Federal Government to furnish assistance . . . to him for carrying out his functions" under the CSA. Taken in its statutory context, this language is most naturally read to include a supervision requirement. Section 873(b) does not authorize agencies to investigate violations of the CSA on their own. Rather, the CSA elsewhere assigns that responsibility to the Attorney General, and section 873(b) simply authorizes other agencies to provide "assistance" to the Attorney General in "carrying out" his CSA functions. And the statute mandates such assistance only when the Attorney General first "request[s]" it, 21 U.S.C. § 873(b), further signaling the Attorney General's control over the process. Together, these elements of the statute —that the Attorney General makes a "request" for others to "furnish assistance" in carrying out a specific set of functions that Congress has assigned to him—demonstrate that the Attorney General must supervise those who provide the assistance.

Background principles rooted in the separation of powers reinforce this conclusion. As we noted when we first interpreted section

873(b), the Department generally cannot "assign the execution of its statutory responsibilities to other agencies." Olson Memo at 5. Rather, by expressly assigning the Department certain responsibilities, Congress "has generally expressed its intent that these duties should be discharged by officials of this Department." *Id.* That conclusion reflects the well-established rule that "if the laws require a particular officer by name to perform a duty, not only is that officer bound to perform it, but no other officer can perform it without a violation of the law." *Centralizing Border Control Policy Under the Supervision of the Attorney General*, 26 Op. O.L.C. 22, 23 (2002) (alterations omitted) (quoting *The President and Accounting Officers*, 1 Op. Att'y Gen. 624, 625 (1823)). Transfers of statutory authority from one department to another "may normally be accomplished only by legislation" or the now-defunct Reorganization Act. *Id.* (quoting *Litigating Authority of the Office of Federal Inspector, Alaska Natural Gas Transportation System*, 4B Op. O.L.C. 820, 823 (1980)). Reading section 873(b) to include a supervision requirement avoids any concern that, by seeking the involvement of other agencies in the conduct of the Department's mission, the Attorney General would be improperly transferring powers vested in the Department to another agency without Congress's consent.

Having concluded that section 873(b) requires designated personnel to be supervised by DEA when engaging in CSA investigations, we now turn to the supervisory mechanisms in the current ICA and note that, taken together, they satisfy that requirement. In particular, under the ICA, HSI is obligated to "notify DEA of investigations involving the exercise of" CSA authorities and to "invite DEA to participate" in all CSA investigations. ICA § IV.A.1. In addition, when HSI special agents "become aware they may be conducting a controlled delivery or cold convoy," they must notify DEA and "submit an operational plan or other mutually agreed upon written notice." *Id.* § IV.B.5. And for certain "undercover investigative operations," as well as other investigative activities that DEA deems "sensitive," HSI must submit to DEA specific written proposals and obtain DEA approval. *Id.* § IV.B.7. Even if DEA does not actively participate in HSI's day-to-day narcotics operations, these notice provisions are an important element of supervision insofar as they afford DEA the opportunity to provide input and guidance.

In addition, when disputes arise between HSI and DEA, the disputes are resolved by a joint DEA-HSI "Headquarters Review Team" chaired by a senior DEA official. *Id.* § IV.A.3; Joint Letter at 4. When that body is evenly split, the senior DEA official provides a decision, subject to an appeal only to the agency heads. ICA § IV.A.3. Similarly, when disputes arise that require "exigent resolution," a DEA official "will make a decision and the agencies will act in accordance with the decision." *Id.* § IV.A.5. Finally, the Joint Letter provides for annual training of designated HSI special agents to ensure consistency and clarity regarding their authority under the CSA. Joint Letter at 1. We think these provisions, together with the notice provisions described above, satisfy the requirement of supervision imposed by section 873(b).

We have not been asked to consider any particular modifications to DEA's role under the ICA and do not offer any views here on other potential arrangements. We note, however, that if these supervisory provisions were weakened, it could at some point become difficult to characterize designated HSI personnel as acting under the supervision of the Attorney General, rather than assuming the Attorney General's responsibilities— which they may not do consistent with the CSA.

## III.

Your second question concerns state and local law enforcement officers who support HSI's mission by serving on HSI-led task forces. DHS has informed us that those task force officers, or TFOs, are designated to exercise Title 19 authority (regarding customs and duties), *see* 19 U.S.C. § 1401(i), and that they are "often co-located with HSI, often work full time under the direct and daily supervision of HSI Special Agents, receive extensive training from HSI, and conduct federal investigations." DHS Submission at 4. You asked whether either section 873 or section 878 of Title 21 authorizes the designation of these TFOs to investigate violations of the CSA. For the reasons that follow, we conclude that section 878 provides such authority and thus do not address whether the TFOs may also be designated under section 873(b).

As discussed above, section 878 sets forth the "special types of law enforcement functions" assigned to DEA officers in carrying out the CSA. Olson Memo at 3–4. Crucially for our purposes, section 878 assigns those responsibilities not only to "[a]ny officer or employee of the [DEA]," but

also to "any State, tribal, or local law enforcement officer designated by the Attorney General." 21 U.S.C. § 878.

Because TFOs are "State, tribal, or local law enforcement officer[s]," section 878 plainly authorizes the Attorney General (and, by delegation, DEA, *see* 28 C.F.R. § 0.100) to designate them with the full range of DEA officers' authorities. That plain meaning is confirmed by extensive practice. We have long recognized that DEA has "authority under 21 U.S.C. 878 to deputize state and local law enforcement officers to handle a wide variety of federal law enforcement duties related to or arising from the investigation of violations of the federal drug laws." Memorandum for George W. Calhoun, Senior Counsel, Office of the Associate Attorney General, from Douglas W. Kmiec, Deputy Assistant Attorney General, Office of Legal Counsel, *Re: Authority of State and Local Law Enforcement Officers Under 21 U.S.C. 878* at 5 (June 29, 1988) ("1988 Kmiec Memo").[5] And DEA has regularly exercised that authority. *See, e.g.*, Action Memorandum for Sally Yates, Deputy Attorney General, from Karl R. Thompson, Principal Deputy Assistant Attorney General, Office of Legal Counsel, *Re: Proposed Delegation of Authority from the Deputy Attorney General to the Administrator of the Drug Enforcement Administration (DEA) to Temporarily Authorize Special Agents and Deputized Task Force Officers to Perform Law Enforcement Duties Outside DEA's Title 21 Jurisdiction* (Nov. 30, 2016).

To be sure, the proposed use of section 878 to grant *HSI* TFOs authority to enforce the CSA may differ somewhat from prior section 878 designations in that designated HSI TFOs would serve in HSI-led task forces under DEA supervision, rather than directly in DEA task forces. But that difference does not affect our legal conclusion. Indeed, we have previously indicated that a similar arrangement was acceptable under section 873(b). Specifically, in 1984, we addressed a proposal by Customs to use certain buildings and equipment of the Federal Communications

---

[5] Although we initially viewed section 878 designations as limited to "general law enforcement work which, while not limited to the investigation of the drug laws, nevertheless arises from or is supplementary to it," 1988 Kmiec Memo at 3, we later disavowed that view, *see* Memorandum for Larry D. Thompson, Deputy Attorney General, from Jay S. Bybee, Assistant Attorney General, Office of Legal Counsel, *Re: Scope of the Attorney General's Authority to Assign Duties Under 21 U.S.C. § 878(a)(5)* at 1 (Mar. 4, 2003). That aspect of our reasoning is not at issue here.

Commission ("FCC") in connection with anti-smuggling investigations. *See* Memorandum for James I. K. Knapp, Deputy Assistant Attorney General, Criminal Division, from Larry L. Simms, Deputy Assistant Attorney General, Office of Legal Counsel, *Re: FCC/Customs Colloca- tion Proposal* (Dec. 19, 1984). We observed that "it is clearly within the Attorney General's power to request that Customs provide assistance to the DEA to enforce the Controlled Substances Act." *Id.* at 6. And we further reasoned that, if the Attorney General did so, then "[o]nce Cus- toms was in the process of assisting in the enforcement of the [CSA] under the direction and supervision of DEA, . . . the Attorney General could presumably request that another agency, such as the FCC, provide further assistance to the operation using his power under § 873(b)." *Id.* In short, we concluded that such a "piggy-back approach" would be valid if the facts were such that both of the assisting agencies "were genuinely assisting the Attorney General in the enforcement of the Controlled Substances Act." *Id.* at 6–7.

The arrangement we addressed in our 1984 opinion is closely analo- gous to the one at issue here. As with Customs and the FCC, the designa- tion of both HSI TFOs and HSI personnel would allow the two groups to cooperate in assisting DEA. And although our prior discussion of the arrangement between Customs and the FCC concerned two requests for assistance under section 873(b), whereas here we address the combination of a request (to HSI) under section 873(b) and a designation (of HSI TFOs) under section 878, we do not believe this difference is material. Just like with Customs and the FCC in 1984, the Attorney General has the authority to request HSI's assistance in the enforcement of the CSA, and the Attorney General also has the authority to designate state and local law enforcement officers with DEA authority. We see no reason why the Attorney General must exercise those authorities in isolation from each other.

We therefore conclude that state and local law enforcement officers may be designated by DEA to assist in enforcing the CSA through their participation in HSI task forces. Moreover, because HSI oversees and supervises the TFOs on a day-to-day basis and, as discussed above, HSI must be under the supervision of DEA when providing assistance under section 873(b), *see supra* Part II.B, HSI TFOs investigating CSA cases must similarly operate under DEA's supervision when they are engaged in

counternarcotics investigations. Additionally, we note that in exercising its delegated designation powers under section 878, DEA is free to impose additional requirements to ensure supervision, including specific selection, training, or notification requirements. We do not address here whether state and local officers designated under section 878 and not already operating under HSI's supervision (as part of an HSI task force or otherwise) would be required to operate under DEA supervision.

## IV.

For these reasons, we conclude that the Attorney General may designate both (1) HSI special agents whose regular duties do not include CSA investigations, and (2) state and local law enforcement officers assigned to HSI task forces, to assist in the enforcement of the CSA. In carrying out such enforcement activities, both categories of designated personnel must operate under the supervision of DEA.

TRISHA B. ANDERSON
*Principal Deputy Assistant Attorney General*
*Office of Legal Counsel*